1  Law Offices of Broening, Oberg, Woods & Wilson, P.C.    (SPACE BELOW FOR FILING STAMP ONLY)
   1122 E. Jefferson Street
2  Phoenix, AZ  85036
   (602) 271-7700
3  Fax:  (602) 258-7785
   Michael J. Ryan, Esq.
4  Bar No.  017467
   mjr@bowwlaw.com
5
   Attorney for Defendants
6  NATIONAL UNION FIRE INSURANCE COMPANY
   OF PITTSBURGH, PA., a Pennsylvania corporation;
7  COSTCO WHOLESALE CORPORATION, a
   Washington corporation
8

9

                    UNITED STATES DISTRICT COURT
10
                         DISTRICT OF ARIZONA
11

12
   YOKOHAMA TIRE CORPORATION,            **Case No.  CV-07-645-PHX-MHM**
13 INC., a California corporation,
                                         **DEFENDANTS' MOTION TO DISMISS**
14               Plaintiff,              **DECLARATORY RELIEF COMPLAINT**

15 v.                                    **ORAL ARGUMENT REQUESTED**

16 NATIONAL UNION FIRE INSURANCE         **[F.R.C.P. 12(b)(1), 12(b)(6); 28 U.S.C. §2201]**
   COMPANY OF PITTSBURGH, PA., a
17 Pennsylvania corporation; COSTCO      **[Accompanying documents:  Declarations of**
   WHOLESALE CORPORATION, a             **James P. Wagoner and Robert Carlson;**
18 Washington corporation,               **Request for Judicial Notice; Proposed Order]**

19               Defendant.              **DATE:**
                                         **TIME:**
20                                       **DEPT:**

21                                       **Honorable Mary H. Murguia**

22

23

24

25

26

27

28

Defendants, National Union Fire Insurance Company of Pittsburgh, PA. ("National Union") and Costco Wholesale Corporation ("Costco") respectfully submit their Motion to Dismiss Plaintiff's Declaratory Relief Complaint. The motion is based upon the attached Memorandum of Points and Authorities, the attached exhibits, and the entire record and proceedings in this case.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION AND SUMMARY OF ARGUMENT

This action by Plaintiff Yokohama Tire Corporation ("Yokohama") is a thinly veiled attempt to manufacture a colorable dispute where no actual "case or controversy" exists. Yokohama's obvious motive is to thwart prosecution of a previously filed and presently pending action in California against Yokohama and its insurer, Tokio Marine and Nichido Fire Insurance Company, Limited ("Tokio Marine"), which fully encompasses all relevant issues between the parties to this action.

The California Action seeks damages in the form of settlement proceeds paid by Defendant National Union Fire Insurance Company of Pittsburgh, P.A. ("National Union") on behalf of its insured, Defendant Costco Wholesale Corporation ("Costco"), to settle the two "Daer" actions referred to in the Complaint on file herein[1] which arose out of an allegedly defective tire manufactured by Yokohama and sold by Costco.[2]

Yokohama's Complaint is framed as an action for declaratory relief. However, the allegations of the Complaint not only fail to allege facts establishing the existence of a controversy, but affirmatively allege facts negating the existence of any viable claim by Costco against Yokohama and thus the lack of any true "controversy." Specifically, Yokohama's Complaint alleges that "Costco received a defense and indemnification from its insurer." Under Arizona and federal law, an insured who has been paid in full by his insurer is not the real party in

---

[1] *Jack Daer v. Yokohama Tire Corporation, et al.,* Maricopa County Superior Court in Arizona, Action No. CV2003-005887, and *Jack Daer v. Ford Motor Company, et al.,* United States District Court of Arizona, Action No. CIV 01 0861 PHX JWS.

[2] These are the same "Daer Actions" identified in Yokohama's Complaint herein.

1

1  interest and is not entitled to bring action in his own name against the third party tortfeasor.

2  Instead the action must be brought by the insurer who, by virtue of subrogation, becomes the only

3  real party in interest. *United Pacific/Reliance Ins. Co. v. Kelley,* 127 Ariz. 87, 89, 618 P.2d 257,

4  259 (1980) ["If the subrogee has paid an entire loss suffered by the insured, it is the only real

5  party in interest and must *sue* in its own *name*"]; *United States v. Aetna Casualty & Surety Co.,*

6  338 U.S. 366, 380-381 (1949) [accord]; 3 Moore, Federal Practice (2d Ed.) p. 1339.  Thus,

7  according to the Complaint, National Union is the only party with standing to seek recovery of

8  sums paid in defense and indemnity of Costco in the Daer Actions.

9       Furthermore, while it is true, contrary to the allegations of the Complaint, that Costco

10  defended itself and paid a portion of the funds necessary to settle the Daer Actions, that

11  settlement occurred in July of 2005 and the last tender made by Costco to either Yokohama or its

12  insurer Tokio Marine was in June of 2005.  As Yokohama is well aware, Costco has made no

13  tenders or demands of any type against Yokohama related to the Daer Actions since that time and

14  the Complaint does not allege otherwise.  This is because Costco has deliberately elected to

15  forego any such claim. (Declaration of Robert Carlson ("Carlson Decl."), ¶ 12.)

16       Accordingly, there was no "actual controversy" between Yokohama and Costco at the

17  time the Complaint was filed as required by Article III, Section Two of the U.S. Constitution, the

18  Declaratory Relief Act, 28 U.S.C. §2201, and Arizona's Declaratory Relief Statute, A.R.S. 12-

19  1831.  As such, Costco should be dismissed from this action as it was fraudulently joined and is

20  an unnecessary defendant.

21       In addition, and independent of the foregoing, this action is essentially duplicative of the

22  first filed California action.  Under the well established "first filed" rule, the California action

23  should be allowed to proceed while the present action is dismissed or stayed.

24  ## STATEMENT OF FACTS

25       ### A.    The National Union Policy

26       National Union insured Costco as a named insured under Commercial Umbrella Liability

27  Policy No. BE 7401075 for the policy period September 1, 2000 through September 1, 2001, with

28  liability limits of $50,000,000, excess to a primary policy provided by Kemper with limits of

2

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

DEFENDANTS' MOTION TO DISMISS
DECLARATORY RELIEF COMPLAINT  CASE NO.  CV-07-645-PHX-MHM

1   $1,000,000 for each occurrence, $2,000,000 aggregate, which in turn is excess to a $1,000,000

2   per occurrence Self-Insured Retention ("SIR").  (Declaration of James P. Wagoner ("Wagoner

3   Decl"), ¶ 3; Defendants' Requests for Judicial Notice ("Defendants' RJN"), Ex. B, ¶ 9.)  The

4   National Union Policy contains an "Other Insurance" provision which states that "If other valid

5   and collectable insurance applies to a loss that is also covered by this policy, this policy will

6   apply excess of the other insurance." (Wagoner Decl., ¶ 3; Defendants' RJN, Ex. B, p. 6, par. J.)

7   **B.**      **The Agreements Between Costco And Yokohama**

8          As outlined in the Complaint, Costco and Yokohama entered into two separate agreements

9   for the sale to the public by Costco of tires manufactured by Yokohama.  On or about October 15,

10  1994, Costco entered into a written "Vendor Agreement" with Yokohama.  Pursuant to the

11  agreement, Yokohama sold tires to Costco for retail sale under the "Yokohama" brand name.

12  (Complaint, ¶¶ 7, 8; Carlson Decl., ¶ 3.)

13         Thereafter, on or about September 25, 1998, Yokohama entered into a "Private Label

14  Agreement" with Costco under which Yokohama, as "SUPPLIER," agreed to manufacture and

15  sell to Costco, as "COMPANY," certain private label products; namely, tires, for retail sale under

16  the "Kirkland Signature" brand name.  (Complaint, ¶ 9; Carlson Decl., Ex. A, p. 1, ¶ 1.)  The

17  Private Label Agreement required that Yokohama maintain insurance with, *inter alia*, a "broad

18  form vendor's endorsement" naming Costco as an additional insured. (Carlson Decl., Ex. A, ¶ 11

19  and Attachment D thereto, ¶¶ 1-3.)

20  **C.**      **The *Daer* Actions**

21         The allegedly defective tire which caused the March 2001 accident and injuries to Jack

22  Daer was a Kirkland tire sold under the "Private Label Agreement."  Following the filing of the

23  Daer Actions, Costco, in or about August 1, 2001, June 22, 2005, and June 28, 2005, allegedly

24  made several tenders to Yokohama and its insurer, Tokio Marine, under the Vendor Agreement.

25  (Complaint, ¶¶ 18, 22, 26, 31.)  On June 28, 2005, Yokohama allegedly asserted that Costco's

26  tenders were ineffective because they were made under the Vendor Agreement, not the Private

27  Label Agreement.  (Complaint, ¶ 33.)

28         On June 28, 2005, Costco made another tender of its defense and indemnification to

3

1    Yokohama, expressly stating that such tender was made "any and all bases, including A.R.S. §

2    12-684(A)". (Complaint, ¶ 32.) The Daer Actions settled right before the scheduled start of trial

3    on or around July 12, 2005.

4        National Union, on behalf of Costco, paid $4,312,681.96 towards the settlement of the

5    Daer Actions on October 6, 2005. (Carlson Decl., ¶ 10.) Costco paid $187,318.04 towards the

6    settlement and $812,681.96 in defending itself, thus exhausting its $1 million SIR. (Carlson

7    Decl., ¶ 11.) Following the settlement, Costco consciously and deliberately chose not to purse its

8    claim against Yokohama and knowingly elected to forego any such claim. (Carlson Decl., ¶ 12.)

9    As a consequence, Costco does not consider that it has any controversy or dispute with

10   Yokohama over sums paid by Costco in defense or settlement of the Daer Actions. (Carlson

11   Decl., ¶¶ 15, 17, 18.)

12       **D.    National Union's California Action**

13       On October 4, 2006, National Union filed the California Action against Tokio Marine and

14   Yokohama. The Complaint alleged causes of action for equitable subrogation, contribution and

15   indemnity. (Defendants' RJN, Ex. A.) As against Tokio Marine, the First Amended Complaint

16   (filed on February 28, 2007) asserted that (a) Tokio Marine insured the same loss as National

17   Union, (b) Tokio Marine's policies are primary to National Union's Policy, (c) Tokio Marine is

18   primarily liable for Costco's loss in the underlying Daer Actions; (d) National Union has

19   compensated Costco for the same loss suffered in the Daer Actions that Tokio Marine is primarily

20   liable for by paying the sum of $4,312,681.96 in settlement of the claims asserted therein; (e)

21   National Union paid the claims asserted in the Daer Actions on behalf of Costco to protect its

22   own interest and not as a volunteer; (f) Costco has an existing, assignable cause of action against

23   Tokio Marine which Costco could have asserted for its own benefit had it not been compensated

24   for its loss by National Union; and (g) Plaintiff National Union is subrogated to Costco's rights

25   against Tokio Marine under the Tokio Marine policies. (Defendants' RJN, Ex. B.)

26       As to Yokohama, the First Amended Complaint in the California action asserts that by

27   virtue of Costco's tender to Yokohama under the Private Label Agreement, Yokohama had a

28   responsibility under A.R.S. § 12-684 to indemnify Costco for the settlement reached in the Daer

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

4

DEFENDANTS' MOTION TO DISMISS
DECLARATORY RELIEF COMPLAINT  CASE NO.  CV-07-645-PHX-MHM

1   Actions; and that by National Union's settlement payment on October 6, 2005, National Union

2   discharged in full the liability of Costco and is subrogated to Costco's rights of contribution as a

3   joint tortfeasor against Yokohama under A.R.S. §§ 12-2501 and 12-2503. (Defendants' RJN, Ex.

4   B, ¶¶ 39, 43, 44.)

5          In sum, the California Action alleges that National Union is subrogated to Costco's rights

6   of indemnity stemming from the Daer Actions, the very right Yokohama is trying to negate by

7   way of its Complaint filed in the present action.

8          **E.      Yokohama's Filing of its Complaint for Declaratory Relief In Arizona**

9          Yokohama filed its Complaint for Declaratory Relief in Maricopa County Superior Court,

10  on January 22, 2007.  In its Complaint, Yokohama alleges that: (i) it sold Yokohama brand tires

11  to Defendant Costco for retail sale under a "Vendor's Agreement" (Complaint, ¶ 8); (ii) it sold

12  Kirkland Signature brand tires to Costco for retail sale under a "Private Label Agreement"

13  (Complaint, ¶ 9); (iii) the Private Label Agreement was "specifically negotiated and

14  consummated to deal with the contingencies of sale, warranties, indemnification and insurance

15  with respect to the Kirkland Signature tires" (Complaint, ¶ 10); (iv) an accident involving the

16  Kirkland Signature tires occurred in March of 2001 that lead to litigation in the Arizona state and

17  federal courts referred to as the "Daer Actions" (Complaint, ¶¶ 11, 13); (v) Yokohama and Costco

18  were named defendants in the Daer Actions (Complaint, ¶ 12); (iv) Yokohama "actively

19  participated in the Daer Actions, vigorously defended against the product liability claims

20  pertaining to the Kirkland Signature tire at issue, and satisfied all claims of strict product liability

21  asserted by Daer" (Complaint, ¶ 17); (vi) Costco made tenders to Yokohama and its insurer on

22  August 1, 2001, June 22, 2005 and June 28, 2005, demanding indemnification in the Daer

23  Actions (Complaint, ¶ 18, 24, 26, 31); (vii) Costco's tenders were ineffective because they were

24  made under the Vendor's Agreement rather than under the Private Label Agreement (Complaint,

25  ¶ 18, 20, 23, 27-29, 33); (viii) Costco did not make a tender under the Private Label Agreement

26  until after being informed by Yokohama on the eve of trial on June 28, 2005 that it (Costco) was

27  tendering under the incorrect agreement (Complaint, ¶ 33); (ix) Costco made another tender on

28  June 28, 2005 under the Private Label Agreement "on any and all bases [sic], including A.R.S. §

5

DEFENDANTS' MOTION TO DISMISS
DECLARATORY RELIEF COMPLAINT  CASE NO.  CV-07-645-PHX-MHM

1   12-684(A)" (Complaint, ¶ 32); (x) Yokohama rejected Costco's tender under the Private Label

2   Agreement because the Daer Actions included claims of negligence allegedly not covered by the

3   Private Label Agreement's indemnification provisions (Complaint, ¶ 35); (xi) the Daer Actions

4   subsequently settled prior to trial "with Costco and Yokohama and/or their respective insurers

5   making settlement payments to Daer" (Complaint, ¶40); and (xii) "Costco received a defense and

6   indemnification in the Daer Actions from its insurer, National Union" (Complaint, ¶ 42).

7        Yokohama's Complaint seeks a declaration that (a) Costco's attempts to tender in August

8   of 2001 and June of 2005 were invalid and ineffective or, alternatively, that Yokohama's

9   indemnification obligations to Costco stemming from the Daer Actions, if any, are governed by

10  the Private Label Agreement, and not the Vendor's Agreement; and (b) that Yokohama is not

11  obligated to indemnify Costco or National Union for any costs, fees or losses actually incurred in

12  connection with the Daer Actions. (Complaint, (Prayer) at 8:21–9:3.)

13       However, Costco has not written any demand letters to Yokohama or otherwise sought to

14  pursue any claim against Yokohama arising out of the Daer Actions since the July, 2005

15  settlement of those actions. (Carlson Decl., ¶ 15.)  In fact, Costco had closed its file in the Daer

16  Actions in September of 2005, and was not, at any time prior to being served with the Present

17  Action, considering pursuing recovery of its fees against Yokohama. (Carlson Decl., ¶ 15.)  Had

18  Costco intended to do so, it would have proceeded by way of the Arbitration provision in the

19  Private Label Agreement.  (Carlson Decl., ¶ 15, Ex. A.)  Upon being served with this action,

20  Costco reconsidered the possibility and again decided not to pursue any claim against Yokohama

21  for sums paid in defense and settlement of the Daer Actions. (Carlson Decl., ¶¶ 15, 18.)

22  **LEGAL ARGUMENT**

23  I.   **THERE IS NO "ACTUAL CONTROVERSY" BETWEEN COSTCO AND
     YOKOHAMA AND THUS COSTCO SHOULD BE DISMISSED ON THE BASIS**
24   **OF FRAUDULENT JOINDER**

25       A.   **Legal Standard on Motion to Dismiss**

26            1.   **Rule 12(b)(1)**

27       Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a complaint may be

28  dismissed when it is shown that there is no subject matter jurisdiction.  Such a showing may be

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

made either from the allegations of the Complaint itself (together with exhibits attached thereto and judicially noticeable facts) or by reference to extrinsic evidence apart from the pleadings. *Wolfe v. Strankman,* 392 F.3d 358, 362 (9th Cir. 2004). The major difference between the two is that under the former, the court must consider the allegations of the complaint as true; whereas under the latter, the court determines the facts for itself. *Id.; Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004).

### 2.   Rule 12(b)(6)

A complaint should be dismissed under FRCP 12(b)(6) if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him or her to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984), *Balistreri v. Pacifica Police Department,* 901 F.2d 696, 699 (9th Cir. 1990). A Rule 12(b)(6) dismissal can be based on the *failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory.* *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533-534 (9th Cir. 1984).

In considering a Motion to Dismiss, the Court must accept as true the allegations of the complaint in question; but these assumptions do not extend to "conclusory allegations of law", "unwarranted deductions of fact" or "unreasonable inferences". *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir. 1987); *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001); *Western Mining Council v. Wyatt,* 643 F.2d 618, 624 (9th Cir. 1981). Courts will not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003).

Here, while Yokohama has made a number of broad, sweeping, generalized claims regarding tenders made by Costco several years ago prior to the settlement of the Daer Actions, there are no allegations of a present, justiciable controversy that will support a cause of action for declaratory relief against Costco.

### B.   A Party Should Be Dismissed When Its Joinder is a "Sham" or "Fraudulent"

A nondiverse party named in the state court action may be disregarded upon removal where the District Court determines that the party's joinder is a "sham" or "fraudulent" such that

7

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

DEFENDANTS' MOTION TO DISMISS
DECLARATORY RELIEF COMPLAINT  CASE NO.  CV-07-645-PHX-MHM

1   no possible cause of action has been stated against that party. *Morris v. Princess Cruises, Inc.*,

2   236 F.3d 1061, 1067 (9th Cir. 2001); *United Computer Sys. v. At&T Info. Sys.*, 298 F.3d 756, 761

3   (9th Cir. 2002) [citizenship of a fraudulently joined defendant is "not relevant for purposes of

4   diversity jurisdiction"].

5       "Fraudulent joinder is a term of art. If the plaintiff fails to state a cause of action against a

6   resident defendant, and the failure is obvious according to the settled rules of the state, the joinder

7   of the resident defendant is fraudulent." *Moore's Federal Practice* (1986) para. O.161[2]. The

8   defendant seeking removal to the federal court is entitled to present the facts showing the joinder

9   to be fraudulent." *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987); see

10  also, *Smith v. Southern Pacific Co.*, 187 F.2d 397, 400 (9th Cir. 1951).

11      A joinder is fraudulent if there is no intention to get a joint judgment and there is no

12  colorable ground for so claiming. *McCabe v. General Foods Corp., supra,* 811 F.2d at 1339. In

13  determining whether an attempted joinder is fraudulent, the court is not bound by the allegations

14  of the pleadings, but may instead "consider the entire record, and determine the basis of joinder

15  by any means available." A defendant that alleges co-defendants have been fraudulently joined

16  "is entitled to present the facts showing the joinder to be fraudulent." *Ritchey v. Upjohn Drug*

17  *Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).

18      In the instant action, there is no possibility that Yokohama will be able to establish a right

19  to declaratory relief against Costco as the Complaint affirmatively alleges facts negating the

20  existence of any viable claim by Costco against Yokohama; to wit, that "Costco received a

21  defense and indemnification from its insurer." (Complaint, ¶ 42.) Where a subrogee has paid an

22  entire loss suffered by the insured, it is the only real party in interest and the only party with

23  standing to bring an action to recover the loss. *United Pacific/Reliance Ins. Co. v. Kelley, supra,*

24  127 Ariz. at 89; 3 Moore, Federal Practice (2d Ed.) p. 1339; see also, *Tucson Gas, Electric Light*

25  *and Power Company v. Board of Supervisors,* 7 Ariz.App. 164, 165, 436 P.2d 942, 943 (1968),

26  modified on rehearing on other grounds, 7 Ariz.App. 429, 440 P.2d 113 (1968). Thus, according

27  to the Complaint, National Union, and not Costco, is the only party with standing to seek

28  recovery of sums paid in defense and indemnity of Costco in the Daer Actions; and Yokohama

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

8

DEFENDANTS' MOTION TO DISMISS
DECLARATORY RELIEF COMPLAINT CASE NO.  CV-07-645-PHX-MHM

1    has not, and can not, state a cause action against Costco of for declaratory relief.

2    **C.    This Court May Only Grant Declaratory Relief Where There is an Actual Controversy Between the Parties**

3    The Arizona Uniform Declaratory Judgments Act, A.R.S. § 12-1831, et seq., provides that

4    a declaratory judgment action is appropriate only in an actual case or controversy of a justicable

5    nature. *Board of Supervisors v. Woodall*, 120 Ariz. 391, 586 P.2d 640, *affirmed in part, reversed*

6    *in part on other grounds*, 120 Ariz. 379, 586 P.2d 628 (1978); *Arizona State Bd. of Dir. v.*

7    *Phoenix Union H.S. Dist.*, 102 Ariz. 69, 424 P.2d 819 (1967).  To vest a court with declaratory

8    judgment jurisdiction, the claimant must show facts sufficient to establish a controversy which is

9    real and not merely colorable. *Planned Parenthood v. Marks*, 17 Ariz.App. 308, 497 P.2d 534

10   (1972).  Further, declaratory relief should be based on an existing state of facts, not those which

11   may or may not arise in the future. *Lake Havasu Resort v. Commercial Loan Ins. Corp.*, 139

12   Ariz.App. 369, 678 P.2d 950 (1983).

13   In addition, A.R.S. § 12-1831 requires not only that the plaintiff allege a right, status or

14   legal relation in which it has a definite interest, but also that the opposing party had denied such

15   right, status or legal relation. (A.R.S. § 12-1832; *Land Department v. O'Toole*, 154 Ariz. 43, 47

16   (1987); *Morris v. Fleming*, 128 Ariz.App. 271, 273 (1980).)  "For a justiciable controversy to

17   exist, a complaint must assert a legal relationship, status or right in which the party has a definite

18   interest *and an assertion of the denial of it by the other party*." *Land Department v. O'Toole*,

19   *supra*, 154 Ariz. at p. 47, [emphasis in original]; see also, A.R.S. § 12-1832; *Morris v. Fleming*,

20   supra, 128 Ariz. at p. 273.[3]

21   In any event, because this action has been removed to federal court, Yokohama's state law

22   claim under A.R.S. § 12-1831 must be converted to a claim under 28 U.S.C. § 2201.  *Mardian*

23   *Equip. Co. v. St. Paul Fire & Marine Ins. Co.*, 2006 U.S. Dist. LEXIS 60213, *13-14 (Ariz.

---

25   [3] Other states adopting the Uniform Declaratory Relief Act have construed the "actual controversy" requirement in the same fashion. See *State ex rel. O'Connell v. Dubuque*, 68 Wn.2d

26   553, 558 (Wash. 1966) ["parties having existing and genuine, as distinguished from theoretical, rights or interests"]; *Doe v. Bryan*, 102 Nev. 523, 525 (Nev. 1986) [a justiciable controversy is a

27   preliminary hurdle to an award of declaratory relief]; *Boundary Backpackers v. Boundary County*, 128 Idaho 371, 380 (Idaho 1966) [must raise issues that are definite and concrete, and involve a

28   real and substantial controversy presenting a need for court action at the present time].

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

1    2006).  As such, a "justiciable controversy" is still required.

2        Under 28 U.S.C. § 2201, an "actual controversy" must exist before the Court can grant the

3    requested Declaration:

> In a case of actual controversy within its jurisdiction . . any court of
> the United States, upon the filing of an appropriate pleading, may
> declare the rights and other legal relations of any interested party
> seeking such declaration, whether or not further relief is or could be
> sought.  28 U.S.C. § 2201(a).

10       This has been interpreted to require "a substantial controversy, between parties having

11   adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

12   declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

13   In "the absence of a controversy of sufficient immediacy and reality, a district court lacks

14   jurisdiction to issue a declaratory judgment." *White Mountain Apache Tribe v. Williams*, 810

15   F.2d 844, 856 (9th Cir. 1984) (citation and attribution omitted).

16       In addition, even if a controversy existed at the time the lawsuit was filed, it must also

17   exist at the time that the Judgment is issued.  "The 'controversy' must exist at the time of the

18   hearing as to the availability of declaratory relief and that determination is entirely independent of

19   any controversy that may have existed in the past." *Sellers v. Regents of University of Cal.*, 432

20   F.2d 493, 499-500 (9th Cir. 1970).

21       In order for a declaratory judgment action to lie, there must be "a substantial controversy,

22   between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

23   issuance of a declaratory judgment." *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975) (citation and

24   attribution omitted, emphasis in original).  "The controversy must be definite and concrete,

25   touching the legal relations of parties having adverse legal interests." *Hiliblom v. United States*,

26   896 F.2d 426, 430 (9th Cir. 1990).  The controversy has to be "real and substantial" and the

27   threatened harm to the party seeking declaratory relief must be "direct and immediate rather than

28   speculative or hypothetical" *Id.* (citation and attribution omitted).

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

10

DEFENDANTS' MOTION TO DISMISS
DECLARATORY RELIEF COMPLAINT   CASE NO.  CV-07-645-PHX-MHM

1    Further, if another party challenges the existence of a justiciable "case or controversy," the

2    burden rests on the party seeking declaratory relief to demonstrate the existence of such a "case or

3    controversy." *Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 95 (1993) ["In the trial court, of

4    course, a party seeking a declaratory judgment has the burden of establishing the existence of an

5    actual case or controversy."]; *Government Emples. Ins. Co. v. Dizol*, 133 F.3d 1220, 1228 (9th

6    Cir. 1998) [party asserting jurisdiction bears burden to establish it].

7    The existence of an actual controversy is fact specific, and must be evaluated on a case by

8    case basis. "The difference between an abstract question and a 'controversy' contemplated by the

9    Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be

10   possible, to fashion a precise test for determining in every case whether there is such a

11   controversy." *Maryland Gas. Go. v. Pacific Goal & Oil Go.*, 312 U.S. 270, 272-273 (1941).

12   The Ninth Circuit has followed numerous other circuits in creating a "reasonable

13   apprehension of litigation" standard for determining whether an actual controversy exists. In other

14   words, an actual controversy exists where the plaintiff in a declaratory relief action has a

15   "reasonable apprehension" of suit by the defendant. *Societe de Conditionnement en Aluminium v.*

16   *Hunter Engineering Co., Inc.*, 655 F.2d 938, 944 (9th Cir. 1981); *Denbicare U.S.A. v. Toys "R"*

17   *Us,* 84 F.3d 1143, 1146 (9th Cir. 1996) [party seeking declaratory relief must demonstrate "a real

18   and reasonable apprehension that he will be subject to liability"].

19   "The 'actual controversy' requirement of the Act is the same as the 'case or controversy'

20   requirement of Article III of the United States Constitution." *Societe de Conditionnement en*

21   *Aluminium v. Hunter Engineering Co., Inc., supra,* 655 F.2d at 942. The necessity of an actual

22   controversy prevents Court's from issuing advisory opinions regarding hypothetical facts:

23           As is well known, the federal courts established pursuant to Article

24           III of the Constitution do not render advisory opinions. For

25           adjudication of constitutional issues, concrete legal issues,

26           presented in actual cases, not abstractions, are requisite. *United*

27           *Public Workers v. Mitchell,* 330 U.S. 75, 89 (1947) (footnotes and

28           attributions omitted).

11

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

DEFENDANTS' MOTION TO DISMISS
DECLARATORY RELIEF COMPLAINT  CASE NO.  CV-07-645-PHX-MHM

1      The necessity of an actual controversy has been called a "bedrock requirement" which is

2  a mandatory prerequisite for a federal court to decide a case. "No principle is more fundamental

3  to the judiciary's proper role in our system of government than the constitutional limitation of

4  federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 819

5  (1997), quoting from *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 37(1976).

6      Further, "Article III requires that a live controversy persist throughout all stages of the

7  litigation." *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1128-1129 (9th Cir. 2005);

8  *Preiser v. Newkirk*, 422 U.S. 395, 401-402 (1975) ["case and controversy" must exist "at all

9  stages of review"]. Events occurring subsequent to the filing of the action do not retroactively

10  create jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n.4 (1992).

11      **D.**    **<u>Since There Is No Actual Controversy Between Costco And Yokohama,</u>**

12               **<u>Costco Was Fraudulently Joined And Should Be Dismissed</u>**

13      In the instant action, there is no true "controversy" between Yokohama and Costco

14  sufficient to establish the existence of a "controversy" necessary to secure declaratory relief under

15  either State or Federal law. First, apart from the conclusory allegations that Costco made several

16  tenders requesting complete indemnification in 2001 and 2005, and that Yokohama was not

17  obligated to indemnify Costco because "the August 1, 2001, June 22, 2005 June 28, 2005

18  attempts to tender by  Costco were invalid and ineffective." The Complaint sets forth no facts

19  suggesting the existence of an actual, present controversy. (Complaint, ¶ 44.) No facts are

20  alleged which established the existence of any dispute between Costco and Yokohama following

21  the settlement of the Daer Actions in July 2005. Specifically, there are no allegations of any

22  demands, tenders, denials or rejections during the one and half (1½) years since the settlement of

23  the Daer Actions, much less reference to any communications between the parties at all on the

24  subject.

25      More importantly, the Complaint affirmatively negates the existence of any controversy

26  between Yokohama and Costco. As alleged in Yokohama's Complaint, "Costco received a

27  defense and indemnification from its insurer." (Complaint, ¶ 42.) An insured who had been paid

28  in full by his insurer is not the real party in interest, and is not entitled to bring action in his own

1   name against the third party tortfeasor. *Hilbrands v. Far East Trading Co.*, 509 F.2d at 1322

2   (1975); *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1093 (2004); *United Pacific/Reliance Ins. Co.*

3   *v. Kelley, supra,* 127 Ariz. at 89; 3 Moore, Federal Practice (2d Ed.) p. 1339.

4   　　　Thus, based on the allegations of the Yokohama Complaint alone, National Union is the

5   only party with standing to seek recovery of sums paid in defense and indemnity of Costco in the

6   Daer Actions, and Costco has no such standing. Since the Complaint affirmatively alleges facts

7   negating the existence of any viable claim by Costco against Yokohama for recovery of sums

8   paid in defense and settlement of Costco in the Daer Actions, there are no allegations of an actual

9   controversy between Costco and Yokohama and no possible cause of action has been stated

10  against Costco. Consequently, Costco's citizenship should be disregarded as "sham" for diversity

11  purposes under 28 U.S.C. § 1441(b).

12  　　　Furthermore, and apart from the allegations of the Complaint, it is undeniable that there is

13  no true controversy existing between Costco and Yokohama with respect to sums paid in defense

14  and settlement of the Daer Actions. Costco has made no tenders or demands to Yokohama under

15  either the Vendor Agreement or the Private Label Agreement since June of 2005, and has not

16  otherwise sought indemnification for its losses or reimbursement of its defense costs under the

17  Vendor Agreement or the Private Label Agreement (or any other agreement) since the Daer

18  Actions settled in or around July of 2005. (Carlson Decl., ¶15.) Nor has Costco otherwise sought

19  to pursue in any manner any claims against Yokohama arising out of the Daer Actions. (Carlson

20  Decl., ¶18.)

21  　　　In fact, Costco had closed its file in the Daer Actions in September of 2005, and was not,

22  at any time prior to being served with the Present Action, considering pursuing recovery of its

23  fees against Yokohama. (Carlson Decl., ¶¶ 12, 15.) Had Costco intended to do so, it would have

24  proceeded by way of the Arbitration provision in the Private Label Agreement. (Carlson Decl., ¶

25  15, Ex. A.) Upon being served with this action, Costco reconsidered the possibility and again

26  decided not to pursue any claim against Yokohama for sums paid in defense and settlement of the

27  Daer Actions. (Carlson Decl., ¶¶ 15, 18.) Therefore, as Yokohama cannot establish any actual,

28  definite controversy between it and Costco, nor can Yokohama establish that it had or has an

13

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

DEFENDANTS' MOTION TO DISMISS
DECLARATORY RELIEF COMPLAINT  CASE NO.  CV-07-645-PHX-MHM

1  objective, reasonable apprehension of being subject to litigation and/or liability from Costco, the

2  alleged dispute between Costco and Yokohama is purely hypothetical and does not satisfy the

3  "actual case or controversy" requirements of either A.R.S. §12-1831, 28 U.S.C. §2201 or Article

4  III of the U.S. Constitution.

5          There are simply no facts alleged in Yokohama's Complaint to establish the requisite

6  controversy. Because a justiciable controversy must "crystallize" between *both* parties before a

7  court may provide declaratory relief, Yokohama's assertion of Costco's tenders made several

8  years ago before the Daer Actions settled cannot create an actual controversy. See, e.g., *Societe*

9  *de Conditionnement en Aluminum, supra,* 655 F.2d at 942-943; *Nat'l Union Fire Ins. Co. v. ESI*

10  *Ergonomic Solutions,* 342 F.Supp.2d at 862 (2004) [The mere assertion of a claim against another

11  without actions creating a reasonable apprehension of litigation are insufficient to create an actual

12  controversy]; *Fid. Nat'l Fin., Inc. v. Ousley,* 2006 U.S. Dist. LEXIS 53965, at *12-13 (2006)

13  [demand letter insufficient to create actual controversy]; *Pac. Bell Internet Servs. v. Recording*

14  *Indus. Ass'n of Am., Inc.,* 2003 U.S. Dist. LEXIS 21659, at *13-14 (2003) [multiple notice letters

15  outlining potential dispute and legal action insufficient to create actual controversy].

16          Yokohama's allegations regarding Costco's previous tenders prior to the parties

17  settlements of the Daer Actions do nothing to establish any actual controversy at the time

18  Yokohama filed its Complaint. As a result, at the time of the filing of this action there was no

19  "actual controversy" as required by Article III, the Act and A.R.S. § 12-1831 as between Costco

20  and Yokohama. Thus, Costco was fraudulently joined and should be dismissed.

21  **II.     THIS ACTION SHOULD BE STAYED UNTIL THE FIRST FILED CALIFORNIA**
22  **ACTION IS CONCLUDED**

23          A federal court has the inherent power to stay its proceedings where a parallel state action

24  is pending. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.

25  Ct. 1236, 1246, 47 L. Ed. 2d 483 (1976) ("*Colorado River*").

26          "A trial court may, with propriety, find it is efficient for its own docket and the fairest

27  course for the parties to enter a stay of an action before it, pending resolution of independent

28  proceedings which bear upon the case. This rule applies whether the separate proceedings are

14

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

DEFENDANTS' MOTION TO DISMISS
DECLARATORY RELIEF COMPLAINT  CASE NO. CV-07-645-PHX-MHM

1  judicial, administrative, or arbitral in character, and does not require that the issues in such

2  proceedings are necessarily controlling of the action before the court. (Citations.)  In such cases

3  the court may order a stay of the action pursuant to its power to control its docket and calendar

4  and to provide for a just determination of the cases pending before it." *Leyva v. Certified Grocers*

5  *of California, Ltd.,* 593 F.2d 857, 863-864 (9th Cir. 1979).

6       This doctrine rests on considerations of wise judicial administration, giving regard to

7  conservation of judicial resources and comprehensive disposition of litigation."  *Nakash v.*

8  *Marciano,* 882 F.2d 1411, 1415, 1417 (9th Cir. 1989), quoting *Colorado River, supra,* 424 U.S.

9  at 817 (internal quotes and parentheses omitted).

10      In *Colorado River* the Court examined four factors to determine whether staying

11  proceedings was appropriate: (1) whether either court has assumed jurisdiction over a *res;* (2) the

12  relative convenience of the forums; (3) the desirability of avoiding piecemeal litigation; and (4)

13  the order in which the forums obtained jurisdiction. *Colorado River, supra,* 424 U.S. at 818.  In

14  *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1 (1993), the Court

15  articulated two more considerations:  (5) whether state or federal law controls; and (6) whether

16  the state proceeding is adequate to protect the parties' rights. *Moses Cone, supra,* 460 U.S. at 25-

17  26.  "These factors are to be applied in a pragmatic and flexible way, as part of a balancing

18  process rather than as a 'mechanical checklist.'" *American Int'l Underwriters, (Phillipines), Inc.*

19  *v. Continental Ins. Co.,* 843 F.2d 1253, 1257 (9th Cir.1988), quoting *Moses Cone,* 460 U.S. at 16,

20  103 S.Ct. at 937.

21      All of the relevant factors support a stay in this case.  The California Action was filed on

22  October 4, 2006.  (Defendants' RJN, Ex. A).  Yokohama and Tokio Marine were served on

23  October 24, 2006, and November 21, 2006, respectively, and following Yokohama's requested

24  extension of time, they both first formally appeared in that action on December 21, 2006.

25  (Wagoner Decl., ¶ 3; Defendants' RJN, Ex. C and D.)  Defendants filed a Demurrer, National

26  Union filed an amended complaint, and both parties have served and responded to discovery.

27  (Wagoner Decl., ¶ 3; Defendants' RJN, Ex. B.)  The California court has held a status conference

28  and scheduled future hearings.  (Wagoner Decl., ¶ 3.)  Neither Yokohama nor Tokio Marine

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

15

DEFENDANTS' MOTION TO DISMISS
DECLARATORY RELIEF COMPLAINT  CASE NO.  CV-07-645-PHX-MHM

1  demanded arbitration under the Private Label Agreement, and under California Code of Civil

2  Procedure § 1281.5(b), their time to do so has expired and their contractual rights to arbitration, if

3  any, have been waived. (Wagoner Decl., ¶ 3.) Thus, California Action was filed first, the

4  California court has already assumed jurisdiction, and the parties are actively litigating the case.

5  With respect to the relative convenience of the forums, Yokohama is a California

6  corporation with its principal place of business in Fullerton, California. Fullerton is in Orange

7  County, which is immediately adjacent to Los Angeles County.[4] (Wagoner Decl., ¶ 4.) Tokio

8  Marine, U.S. Branch, has its principal place of business in Pasadena, California, and operates its

9  Japanese affiliate from that same location where the Daer claim was also processed. (Wagoner

10  Decl., ¶ 5.) State law controls on the issues of insurance law, as both the primary and excess

11  Tokio Marine policies were issued to Yokohama in California (Wagoner Decl., ¶ 5), and Arizona

12  law governs with respect to the tort issues. As such, the California action will fully protect the

13  parties' rights and there is no need for piecemeal litigation. Allowing both actions to proceed

14  would create the risk of inconsistent adjudications and propel the parties into two (2) overly

15  expensive "races to the courthouse." The only issue presented by the present action which is not

16  addressed by the pleadings in the California action is Costco's right to recover its defense costs

17  and its $187,381.04 contribution to the settlement of the Daer Actions. However, Costco has

18  elected to forego its right to seek such sums from Yokohama (Carlson Dec., ¶¶ 12, 15, 18), and

19  will only pursue that claim, if at all, against Tokio Marine which is not a party to this action but is

20  a party to the California action (Carlson Dec., ¶17).

21  More importantly, to permit Yokohama to pursue this action would promote forum

22  shopping and reward its filing of a frivolous lawsuit as the Complaint does not present a true

23  controversy, but rather is merely a work of fiction in an attempt to create a dispute where none

24  exists. These factors dictate that a stay is appropriate in the instant action.

25

26  _____

[4] Defendants request that the Court take judicial notice of this fact pursuant to Federal
Rules of Evidence, Rule 201(b), which permits judicial notice to be taken of a fact that is "not

27  subject to reasonable dispute in that it is (1) generally known within the territorial jurisdiction of
the trial court or (2) capable of accurate and ready determination by resort to sources whose

28  accuracy cannot reasonably be questioned."

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 River Park Place East
Fresno, CA 93720-1501

16

**CONCLUSION**

For all the above reasons, and each of them, Defendants respectfully request that the Court dismiss Costco, and stay the action against National Union pending the outcome of the first filed California Action.

Dated: March 29, 2007

BROENING,      OBERG,      WOODS
& WILSON, P.C.

By:_____/s/_____
Michael J. Ryan
Attorneys       for       Defendants
NATIONAL UNION FIRE INSURANCE
COMPANY   OF   PITTSBURGH,   PA.,
COSTCO                WHOLESALE
CORPORATION

1077489.v1

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 River Park Place East
Fresno, CA 93720-1501

DEFENDANTS' MOTION TO DISMISS
DECLARATORY RELIEF COMPLAINT  CASE NO.  CV-07-645-PHX-MHM

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................1

STATEMENT OF FACTS ........................................................................2

    A.    The National Union Policy ........................................................2

    B.    The Agreements Between Costco And Yokohama ................................3

    C.    The *Daer* Actions........................................................3

    D.    National Union's California Action........................................4

    E.    Yokohama's Filing of its Complaint for Declaratory Relief In Arizona................5

LEGAL ARGUMENT ........................................................................6

I.    THERE IS NO "ACTUAL CONTROVERSY" BETWEEN COSTCO AND YOKOHAMA AND THUS COSTCO SHOULD BE DISMISSED ON THE BASIS OF FRAUDULENT JOINDER..........................................6

    A.    Legal Standard on Motion to Dismiss ....................................6

    B.    A Party Should Be Dismissed When Its Joinder is a "Sham" or "Fraudulent"........................................................7

    C.    This Court May Only Grant Declaratory Relief Where There is an Actual Controversy Between the Parties........................................9

    D.    Since There Is No Actual Controversy Between Costco And Yokohama, Costco Was Fraudulently Joined And Should Be Dismissed................12

II.    THIS ACTION SHOULD BE STAYED UNTIL THE FIRST FILED CALIFORNIA ACTION IS CONCLUDED ................................14

CONCLUSION................................................................17

1

# TABLE OF AUTHORITIES

2

3

Page

## Cases

4

*Allstate Ins. Co. v. Hughes*
  358 F.3d 1089, 1093 (2004) ..........................................................................13

5

6

*American Int'l Underwriters, (Phillipines), Inc. v. Continental Ins. Co.*
  843 F.2d 1253, 1257 (9th Cir.1988) ..............................................................15

7

*Arizona State Bd. of Dir. v. Phoenix Union H.S. Dist.*
  102 Ariz. 69, 424 P.2d 819 (1967) ..................................................................9

8

9

*Balistreri v. Pacifica Police Department*
  901 F.2d 696, 699 (9th Cir. 1990) ..................................................................7

10

*Board of Supervisors v. Woodall,*
  120 Ariz. 391, 586 P.2d 640 (1978) ................................................................9

11

12

*Boundary Backpackers v. Boundary County*
  128 Idaho 371, 380 (Idaho 1966) ....................................................................9

13

*Cardinal Chem. Co. v. Morton Int'l*
  508 U.S. 83, 95 (1993).....................................................................................11

14

15

*Colorado River Water Conservation Dist. v. United States*
  424 U.S. 800, 817 (1976)............................................................................14, 15

16

*Denbicare U.S.A. v. Toys "R" Us*
  84 F.3d 1143, 1146 (9th Cir. 1996) ...............................................................11

17

18

*Doe v. Bryan*
  102 Nev. 523, 525 (Nev. 1986) ......................................................................9

19

*Fid. Nat'l Fin., Inc. v. Ousley*
  2006 U.S. Dist. LEXIS 53965 *12-13 (2006) ...............................................14

20

21

*Gator.com Corp. v. L.L. Bean, Inc.*
  398 F.3d 1125, 1128-1129 (9th Cir. 2005)....................................................12

22

*Government Emples. Ins. Co. v. Dizol*
  133 F.3d 1220, 1228 (9th Cir. 1998) .............................................................11

23

24

*Hilbrands v. Far East Trading Co.*
  509 F.2d 1321, 1322 (1975) ...........................................................................13

25

*Hiliblom v. United States*
  896 F.2d 426, 430 (9th Cir. 1990) .................................................................10

26

*Hishon v. King & Spalding*
  467 U.S. 69, 73 (1984).....................................................................................7

27

28

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

**TABLE OF AUTHORITIES**
(continued)

Page

*Lake Havasu Resort v. Commercial Loan Ins. Corp.*
139 Ariz.App. 369, 678 P.2d 950 (1983) ....................................................................9

*Land Department v. O'Toole*
154 Ariz. 43, 47 (1987)................................................................................................9

*Leyva v. Certified Grocers of California, Ltd.*
593 F.2d 857, 863-864 (9th Cir. 1979) .....................................................................15

*Lujan v. Defenders of Wildlife*
504 U.S. 555, 571 n.4 (1992) ...................................................................................12

*Mardian Equip. Co. v. St. Paul Fire & Marine Ins. Co.*
2006 U.S. Dist. LEXIS 60213, *13-14 (Ariz. 2006) .................................................9

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*
312 U.S. 270, 273 (1941)......................................................................................10, 11

*McCabe v. General Foods Corp.*
811 F.2d 1336, 1339 (9th Cir. 1987) ..........................................................................8

*Morris v. Fleming*
128 Ariz.App. 271, 273 (1980) ...................................................................................9

*Morris v. Princess Cruises, Inc.*
236 F.3d 1061, 1067 (9th Cir. 2001) ..........................................................................8

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*
60 U.S. at 16, 103 S.Ct. at 937 (1993).....................................................................15

*Nakash v. Marciano*
882 F.2d 1411, 1415, 1417 (9th Cir. 1989) ..............................................................15

*Nat'l Union Fire Ins. Co. v. ESI Ergonomic Solutions*
342 F.Supp.2d 853, 862 (2004) ................................................................................14

*Pac. Bell Internet Servs. v. Recording Indus. Ass'n of Am., Inc.*
2003 U.S. Dist. LEXIS 21659, 13-14 (2003) ...........................................................14

*Planned Parenthood v. Marks*
17 Ariz.App. 308, 497 P.2d 534 (1972) .....................................................................9

*Preiser v. Newkirk*
422 U.S. 395, 401-402 (1975) ..................................................................................12

*Preiser v. Newkirk*
422 U.S. 395, 402 (1975)...........................................................................................10

*Raines v. Byrd*
521 U.S. 811, 819 (1997)...........................................................................................12

iii

**TABLE OF AUTHORITIES**
(continued)

Page

*Ritchey v. Upjohn Drug Co.*
139 F.3d 1313, 1318 (9th Cir. 1998) ............................................................8

*Robertson v. Dean Witter Reynolds, Inc.*
749 F.2d 530, 533-534 (9th Cir. 1984) ........................................................7

*Safe Air for Everyone v. Meyer*
373 F.3d 1035, 1039 (9th Cir. 2004) ...........................................................7

*Sellers v. Regents of University of Cal.*
432 F.2d 493, 499-500 (9th Cir. 1970) .......................................................10

*Simon v. Eastern Ky. Welfare Rights Organization*
426 U.S. 26, 37(1976).................................................................................12

*Smith v. Southern Pacific Co.*
187 F.2d 397, 400 (9th Cir. 1951) ................................................................8

*Societe de Conditionnement en Aluminium v. Hunter Engineering Co., Inc.*
655 F.2d 938, 944 (9th Cir. 1981) .........................................................11, 14

*Sprewell v. Golden State Warriors*
266 F.3d 979, 988 (9th Cir. 2001) ................................................................7

*State ex rel. O'Connell v. Dubuque*
68 Wn.2d 553, 558 (Wash. 1966)..................................................................9

*Tucson Gas, Electric Light and Power Company v. Board of Supervisors*
7 Ariz.App. 164, 165, 436 P.2d 942, 943 (1968) .........................................8

*United Computer Sys. v. At&T Info. Sys.*
298 F.3d 756, 761 (9th Cir. 2002) ................................................................8

*United Pacific/Reliance Ins. Co. v. Kelley*
127 Ariz. 87, 89, 618 P.2d 257, 259 (1980) .........................................2, 8, 13

*United Public Workers v. Mitchell*
330 U.S. 75, 89 (1947)................................................................................11

*United States v. Aetna Casualty & Surety Co.*
338 U.S. 366, 380-381 (1949) ......................................................................2

*Warren v. Fox Family Worldwide, Inc.*
328 F.3d 1136, 1139 (9th Cir. 2003) ............................................................7

*Western Mining Council v. Wyatt*
643 F.2d 618, 624 (9th Cir. 1981) ................................................................7

*White Mountain Apache Tribe v. Williams*
810 F.2d 844, 856 (9th Cir. 1984) ..............................................................10

iv

1

## TABLE OF AUTHORITIES
(continued)

2

Page

3

*Wolfe v. Strankman*
  392 F.3d 358, 362 (9th Cir. 2004) .......................................................................7

4

*Wool v. Tandem Computers, Inc.*
  818 F.2d 1433, 1439 (9th Cir. 1987) ....................................................................7

5

6

### Statutes

7

28 U.S.C. § 1441(b) ..................................................................................................13
28 U.S.C. § 2201 ....................................................................................2, 9, 10, 14
28 U.S.C. § 2201(a) ................................................................................................10
A.R.S. § 12-1831 ....................................................................................2, 9, 14
A.R.S. § 12-1832 ......................................................................................................9
A.R.S. § 12-2501 ......................................................................................................5
A.R.S. § 12-2503 ......................................................................................................5
Code of Civil Procedure § 1281.5(b) .....................................................................16
Federal Rules of Civil Procedure Rule § 12(b)(1) ..................................................6
Federal Rules of Civil Procedure § 12(b)(6) ..........................................................7
Federal Rules of Evidence, Rule 201(b) ................................................................16

8

9

10

11

12

13

14

### Other Authorities

15

3 Moore, Federal Practice (2d Ed.) .............................................................2, 8, 13
Arizona's Declaratory Relief Statute ........................................................................2
Article III of the United States Constitution .............................................2, 11, 12, 14
Declaratory Relief Act ..........................................................................................2, 9

16

17

18

19

20

21

22

23

24

25

26

27

28

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS DECLAR 2:06-CV-2891